THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| GINA D'AMORE and MID-ATLANTIC INTERPRETING GROUP, INC., § § § Plaintiffs, § § v. § § UNITED STATES SMALL BUSINESS ADMINISTRATION, § § § Defendant. § | Civil Action No. JURY DEMANDED |

**PLAINTIFFS' COMPLAINT**

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

Plaintiffs, Gina D'Amore and Mid-Atlantic Interpreting Group, Inc. (collectively referred to as "Plaintiffs"), in the above-numbered and entitled case, complain of the United States Small Business Administration ("Defendant" or "SBA"), Defendant in the above-numbered and entitled case, and for cause(s) of action would respectfully show unto the Court and jury as follows:

**I. PARTIES**

1. Plaintiff, Gina D'Amore ("Ms. D'Amore"), is a citizen of the United States and resident of the State of Maryland. Ms. D'Amore is, and was at all times material hereto, President and CEO of Mid-Atlantic Interpreting Group, Inc. Ms. D'Amore is also Deaf.

2. Plaintiff, Mid-Atlantic Interpreting Group, Inc. ("MAIG"), is a corporation organized and existing under the laws of the State of Maryland. MAIG is a Maryland Disadvantaged Business Enterprise ("DBE")/Minority Business Enterprise ("MBE").

MAIG is also an SBA 7(j) and 8(a) business. MAIG's principal place of business is in Maryland.

3. Defendant is an agency of the United States government. As such, the SBA is represented by the United States Department of Justice and can be served through Ryan Patrick, the United States Attorney for the Southern District of Texas, 1000 Louisiana Street, Suite 2300, Houston, Texas 77002.

## II. JURISDICTION

4. This action arises under The Americans with Disabilities Act of 1990 ("ADA"), The ADA Amendments Act of 2008 ("ADAAA"), 42 U.S.C. §§ 12101, *et seq.*, and the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701, *et seq*. (the "Rehabilitation Act").

5. Plaintiffs have exhausted their administrative remedies prior to filing the instant action. Plaintiffs timely filed complaints of discrimination and retaliation with the SBA, which were acknowledged by the SBA. Plaintiffs allowed the SBA the requisite time under 13 C.F.R. Section 136.170 to investigate same. The SBA failed to issue its decision(s) within 180 days, as required by that regulation.

6. The jurisdiction of the Court is invoked pursuant to 28 US.C. §§ 1343(a)(4) and 1346(b)(1).

7. Further, jurisdiction is proper in this Court pursuant to 28 U.S.C. §§1331 and 2201. An actual and justiciable controversy exists between Plaintiffs and Defendant as to which Plaintiffs require declaratory and injunctive relief.

### III. VENUE

8. The SBA has regional offices throughout the United States, including a regional office in Houston, Texas. As such, the SBA resides in this judicial district. Consequently, venue is appropriate in this District pursuant to 28 U.S.C. § 1391.

### IV. FACTS

9. MAIG is a Maryland DBE/MBE. MAIG is also a certified small, disadvantaged business under the SBA's 8(a) program, and part of the SBA's 7(j) Management and Technical Assistance Program. Among other things, MAIG provides American Sign Language ("ASL") interpreting services to Federal customers like the Department of State and the Intelligence and Defense communities.

10. Ms. D'Amore is the President and CEO of MAIG and served in those positions at the time of the SBA's actions giving rise to this Complaint. Ms. D'Amore is Deaf and uses ASL to communicate. In other words, Ms. D'Amore is "disabled" under the ADA, ADAAA, and Rehabilitation Act.

11. The ADA defines "disability" for individuals, such as Ms. D'Amore, as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, **hearing**, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id*. at § 12102(2)(A) (emphasis added). Under the ADAAA, the definition of "disability" should be interpreted in favor of broad coverage of individuals. (The Equal Employment Opportunity Commission's ("EEOC") "Fact Sheet on the EEOC's Final Regulations Implementing the ADAAA"). "An impairment

need not prevent or severely or significantly limit a major life activity to be considered 'substantially limiting.'" (Reference EEOC's "Questions and Answers on the Final Rule Implementing the ADA Amendments Act of 2008"). This same definition of "disability," and the standards for interpreting same, apply under the Rehabilitation Act as well. 29 U.S.C. § 705.

12. In implementing the Rehabilitation Act, Congress made the following relevant findings: "millions of Americans have one or more physical or mental disabilities and the number of Americans with such disabilities is increasing;" "individuals with disabilities constitute one of the most disadvantaged groups in society;" and "individuals with disabilities continually encounter various forms of discrimination in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and public services." *Id*. at § 701(a). Therefore, one of the key purposes of the Rehabilitation Act is "to ensure that the Federal Government plays a leadership role in promoting the employment of individuals with disabilities, especially individuals with significant disabilities, and in assisting States and providers of services in fulfilling the aspirations of such individuals with disabilities for meaningful and gainful employment and independent living." *Id*. at § 701(b)(3). Consistent with this purpose, it is the policy of the United States, and its agencies, such as the SBA, to see "that all programs, projects, and activities receiving assistance under this chapter shall be carried out in a manner consistent with the principles of . . . inclusion, integration, and full participation of the individuals." *Id.* at § 701(c)(3).

13. Section 504 of the Rehabilitation Act bars Federal agencies such as the SBA from discriminating on the basis of disability. 29 U.S.C. § 794(a). More particularly, Section 504 states, in relevant part: "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination . . . under any program or activity conducted by any Executive agency or by the United States Postal Service." *Id*.

14. Further, Section 508 of the Rehabilitation Act requires that electronic and information technology developed, maintained, procured, or used by Federal agencies such as the SBA be accessible to people with disabilities. *Id*. at § 794d. More specifically, Federal agencies are required to ensure "that the electronic and information technology allows, regardless of the type of medium of the technology[,] . . . individuals with disabilities who are members of the public seeking information or services from a Federal department or agency to have access to and use of information and data that is comparable to the access to and use of the information and data by such members of the public who are not individuals with disabilities." *Id*. at § 794d(a)(1)(A)(ii).

15. Despite the foregoing, the SBA has repeatedly discriminated against Ms. D'Amore on the basis of her disability in violation of Sections 504 and 508 of the Rehabilitation Act. When Ms. D'Amore complained to the SBA about its impermissible discrimination, the SBA failed to respond to her complaints in any meaningful way. Rather, the SBA simply ignored those complaints and retaliated against both Ms. D'Amore and MAIG for same.

16. On June 2, 2020, Ms. D'Amore was invited to participate in the SBA's

COVID-19 National Emergency Training Webinars as Ms. D'Amore and MAIG are eligible 7(j) small business participants. Since, as set forth above, Ms. D'Amore is Deaf, she responded to the e-mail invitation inquiring whether an ASL interpreter would be provided. This is because closed captioning would not be a possible accommodation if the training session were interactive and involved attendee participation. With closed captioning, Ms. D'Amore is only able to read what is being said; with an ASL interpreter, Ms. D'Amore would be able to fully participate, interact with the program, and have the interpreter speak on her behalf. Charles George ("Mr. George") of the Office of Management and Technical Assistance referred Ms. D'Amore to Jason Whetsell ("Mr. Whetsell"), the Vice President of Operations at Gabriel Enterprises Consulting Group ("GECG") regarding her interest in attending the courses and her need for an ASL interpreter.

17. On June 8, 2020, Mr. Whetsell informed Ms. D'Amore that GECG only provides closed captioning and ASL is not an available option. Mr. Whetsell stated that all webinar interactivity would be described by closed captioning and Ms. D'Amore would be able to pause and rewind as needed. Ms. D'Amore informed Mr. Whetsell that this would not be a sufficient accommodation for the course, as SBA had confirmed the interactive and participatory nature of the webinar. In response, Mr. George merely responded that, unfortunately, the SBA's conformance with Section 508 of the Rehabilitation Act does not require that all of an individual's accessibility needs will be met.

18. Mr. George's response failed to address or consider the fact that Section 508 of the Rehabilitation Act requires that Ms. D'Amore be provided **access and use**

comparable to the access and use afforded non-disabled individuals. Similarly, Mr. George's response failed to consider Section 504's requirement that Ms. D'Amore not be excluded from the participation in, or be denied the benefits of, the training by reason of her disability. In Ms. D'Amore's case, this means that, since the training was interactive and participatory, she would be provided a reasonable accommodation to allow her full participation and interaction. Put another way, Sections 504 and 508 of the Rehabilitation Act required the provision of an ASL interpreter and not, merely, closed captioning.

19. Since the webinar at issue was scheduled to occur in July 2020 and Ms. D'Amore still desired to participate in same, a formal complaint pursuant to 13 C.F.R. Section 136.170 was filed with the SBA on June 17, 2020 and expeditious resolution was requested. SBA did not investigate the complaint and issue a decision on same within 180 days as required by the regulation. As such, Ms. D'Amore and MAIG were denied the benefit of participating in the above-referenced program and the opportunities it provided. Unfortunately, this is not the first time the SBA failed to provide Ms. D'Amore with a reasonable accommodation.

20. In 2019, Ms. D'Amore was accepted into the SBA's Emerging Leaders Program, as part of the 2019 Emerging Leaders cohort. Before the first session of that program, which took place on April 11, 2019, Ms. D'Amore requested ASL interpreting services to accommodate her participation in the program from Ms. Tonia McCoy, the SBA's Lead Economic Development Specialist and Women's Business Representative for the Baltimore District Office. Ms. D'Amore additionally requested that the interpreters be given Ms. D'Amore's name and information and asked that she receive the interpreters' names, as is standard practice in interpreting. The exchange of information ensures there

are no conflicts of interest prior to the interpreters accepting the assignment, which is in accordance with the Registry of Interpreters for the Deaf Code of Professional Conduct.

21. Ms. McCoy responded to this request by stating that she would not provide the names of the interpreters. Ms. D'Amore informed Ms. McCoy of the reasoning behind the request, noting the Deaf Code of Professional Conduct and stating that MAIG provides ASL interpreters to the Federal government, so it was important that the interpreter did not work for Ms. D'Amore and had the necessary experience and discretion, especially considering that Ms. D'Amore would be discussing sensitive company information during the program.

22. The Emerging Leaders Program overview and networking opportunity was to begin at 3:00 P.M. on April 11, 2019. By 3:00 P.M., no interpreter had arrived. Because of this, Ms. D'Amore was unable to network with the cohort before the program started, which was an invaluable part of the program, and was unable to participate in the first part of the program. Ms. D'Amore contacted Ms. McCoy via cell phone to determine whether there was an issue, but Ms. D'Amore did not receive any information about the interpreter or when the interpreter would arrive.

23. At 3:40 P.M., Ms. Karen Taylor arrived, identifying herself as the interpreter. Ms. D'Amore had great difficulty understanding Ms. Taylor's signs and Ms. Taylor also was not understanding Ms. D'Amore, as Ms. Taylor kept asking Ms. D'Amore to repeat herself. Ms. Taylor stated she was the only interpreter for the three (3)-hour program, which generally would require at least a team of two (2) interpreters. During the program, Ms. D'Amore asked Ms. Taylor to interpret for her so Ms. D'Amore could communicate with the instructor. Ms. Taylor told Ms. D'Amore to sit down, be quiet, and

not disrupt the class. Ms. D'Amore was unable to communicate with the instructor and, thus, was unable to participate in the program.

24. Beyond disappointing, Ms. Taylor's actions were unethical, as interpreters are ethically bound to interpret every word. Ms. Taylor's actions—accompanied with wrong ASL signs—left Ms. D'Amore wondering if Ms. Taylor was a certified interpreter. It turns out, Ms. Taylor was not a certified interpreter.

25. Because Ms. Taylor was not conveying the proper ASL signs and because she refused to speak for Ms. D'Amore, Ms. D'Amore was unable to participate in the program at all. This forced Ms. D'Amore to leave the program early that day. Ms. D'Amore reported the incident to Ms. McCoy the same day.

26. In a telephonic meeting with Ms. McCoy and Ms. Judette Crosbie, an EEOC Program Manager for the SBA, it was clear that Ms. Crosbie was unaware of Ms. D'Amore's basic complaints. Namely, that the interpreter arrived over forty (40) minutes late to the program, refused to communicate for Ms. D'Amore, and was not qualified to communicate for Ms. D'Amore. Ms. Crosbie represented that Ms. Taylor was a certified interpreter, though Ms. Taylor was not—a fact Ms. D'Amore was able to verify on the certified interpreter's database, which revealed that Ms. Taylor was not listed as a certified interpreter or even an associate interpreter. The SBA failed to provide Ms. D'Amore with a qualified interpreter and offered no remedy moving forward, despite Ms. D'Amore repeatedly asking whether the issue would be remedied. Ms. McCoy and Ms. Crosbie failed to address the issues and only stated that they would ask Ms. Taylor why she was late to the program.

27.     Ms. D'Amore met the applicant criteria to participate in the Emerging Leaders Program, was honored to have been selected for the program, and eagerly looked forward to participating in same.  When the SBA failed to provide a reasonable accommodation based on a stated disability known to the SBA and failed to take corrective action before the next program session, Ms. D'Amore filed a formal complaint with Ms. McCoy.  As a result of the complaint, the SBA pressured Ms. D'Amore to voluntarily leave the Emerging Leaders program, to which Ms. D'Amore refused.  Instead of providing Ms. D'Amore with a reasonable accommodation or taking corrective action, on April 25, 2019, Ms. D'Amore was terminated from the Emerging Leaders Program.

28.     On May 3, 2019, Ms. D'Amore submitted a complaint to Assistant Administrator Michele Schimpp regarding her wrongful termination from the program, which was in retaliation for requesting a reasonable accommodation and then not succumbing to pressure from the SBA to resign.  That same day, Assistant Administrator Schimpp acknowledged receipt of Ms. D'Amore's complaint.  Ms.D'Amore followed up with Assistant Administrator Schimpp on October 28, 2019 and undersigned counsel followed up with Assistant Administrator Schimpp on February 12, 2020.  SBA did not investigate the complaint and issue a decision on same within 180 days as required by 13 C.F.R. Section 136.170.  As such, Ms. D'Amore and MAIG were denied the benefit of participating in the above-referenced program and the opportunities it provided.

29.     All of the foregoing demonstrates repeated violations of Sections 504 and 508 of the Rehabilitation Act by the SBA, as well as a pattern and practice of retaliation by the SBA against individuals and their companies for complaining about such violations.  In this instance, the SBA has repeatedly denied Ms. D'Amore and MAIG the benefit of

participation in its programs due to Ms. D'Amore informing SBA of its failures to provide reasonable accommodations to those with hearing disabilities. Moreover, rather than investigate and address its shortcomings in these regards, as required by applicable law and regulation, the SBA has chosen to ignore same. Absent Court intervention, SBA will continue along this course, and Ms. D'Amore and MAIG will continue to suffer discrimination and damages.

30. All conditions precedent to the filing of this Complaint have been performed or have occurred.

## V. CAUSES OF ACTION

### A. Violations of Sections 504 and 508 of the Rehabilitation Act

31. Plaintiffs incorporate the preceding and proceeding paragraphs into this paragraph by reference. The above-described facts constitute retaliation and discrimination based on disability in violation of the ADA, the ADAAA, 42 U.S.C. § 12101, *et seq.*, and the Rehabilitation Act, 29 U.S.C. §§ 794, 794d. The SBA repeatedly refused to provide Ms. D'Amore with reasonable accommodations for her known hearing disability. These repeated failures to provide reasonable accommodations deprived Ms. D'Amore, and, in turn, MAIG of the benefit of participating in the SBA programs that Ms. D'Amore and MAIG qualified for and were invited into, effectively excluded them from participating in such programs, and deprived them of access to and use of information comparable to that provided to non-disabled participants. Upon learning of these failures, SBA exacerbated its discrimination by retaliatorily terminating Plaintiffs' participation in the programs at issue and/or retaliatorily failing to timely respond to these complaints so as to ensure the absence of Plaintiffs' participation in the programs at issue.

32. Plaintiffs incorporate the preceding and proceeding paragraphs into this paragraph by reference. SBA acted both negligently and maliciously by not providing Ms. D'Amore reasonable accommodations or engaging in the interactive process when she disclosed her disability in violation of the ADA, the ADAAA, and the Rehabilitation Act. These acts deprived Ms. D'Amore, and, in turn, MAIG of the benefit of participating in the SBA programs that Ms. D'Amore and MAIG qualified for and were invited into, effectively excluded them from participating in such programs, and deprived them of access to and use of information comparable to that provided to non-disabled participants.

33. Plaintiffs incorporate the preceding and proceeding paragraphs into this paragraph by reference. SBA and its personnel have acted in a manner contrary to the stated purpose and policy of the Rehabilitation Act. Specifically, the SBA has failed to act in a "manner consistent with the principles of . . . inclusion, integration, and full participation of" individuals with hearing disabilities, such as Ms. D'Amore. 29 U.S.C. § 701(c)(3). Instead, the process and methods utilized by SBA to conduct the programs at issue screen out and/or tend to screen out individuals with hearing disabilities in violation of the ADA), the ADAAA, and the Rehabilitation Act.

34. Plaintiffs incorporate the preceding and proceeding paragraphs into this paragraph by reference. The conduct described above proximately caused actual and compensatory damage to Plaintiffs, including, but not limited to, lost profits, lost business opportunities, and humiliation and emotional distress within the jurisdictional limits of this Court.

**B.** **Request for Declaratory Judgment**

35. Plaintiffs incorporate the preceding and proceeding paragraphs into this paragraph by reference. Based upon the facts stated herein and pursuant to 28 U.S.C. § 2201, Plaintiffs request this Court to declare, adjudge, decree and hold: that Ms. D'Amore was entitled to the reasonable accommodations she requested; the SBA failed to provide Ms. D'Amore with those reasonable accommodations; that the SBA retaliated against Ms. D'Amore and MAIG for complaining about the SBA's unlawful conduct; that the SBA must provide Ms. D'Amore with those reasonable accommodations; and that the SBA must reinstate Ms. D'Amore and MAIG into the programs at issue and/or otherwise allow Ms. D'Amore and MAIG's participation in future, similar programs. Plaintiffs plead this request for declaratory relief in addition to, and as an alternative to, their demand for monetary damages.

## VI.   ATTORNEYS' FEES

36. Plaintiffs are entitled to recover their reasonable and necessary attorneys' fees incurred in the prosecution of this action pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(b), the ADA, the ADAAA, and the Rehabilitation Act.

## VII.   PRAYER FOR RELIEF

37. WHEREFORE, Ms. D'Amore and MAIG request that this Honorable Court advance this case on the docket, order a jury trial at the earliest practical date, and grant Plaintiffs the following relief pursuant to all Federal law and statutes cited in the preceding and proceeding paragraphs, including, but not limited to, the following:

(a) Grant Plaintiffs a permanent injunction enjoining Defendant, its agents, successors, employees, and those acting in consort with Defendant, from continuing to violate Plaintiffs' rights;

(b) Issue an order requiring Defendant to provide the reasonable accommodations requested by Plaintiffs;

(c) Issue an order requiring Defendant to reinstate Plaintiffs into the programs at issue and/or otherwise allow Plaintiffs' participation in future, similar programs;

(d) Award Plaintiffs damages for lost profits, lost business opportunities, and any other appropriate relief necessary to make Plaintiffs whole and compensate them for the civil rights violations described above;

(e) Award Ms. D'Amore compensatory damages for the humiliation and emotional distress resulting from the civil rights violations described above;

(f) Award Plaintiffs prejudgment and post-judgment interest as allowed by law;

(g) Award Plaintiffs their attorneys' fees and costs of this suit; and

(h) Award Plaintiffs all other relief, be it general or special, at law or in equity, to which Plaintiffs may show themselves justly entitled.

Respectfully submitted,

______________________________

**NEEL, HOOPER & BANES, P.C.**
Bryant S. Banes
Federal ID No. 31149
Texas State Bar No. 24035950
Sarah P. Harris
Federal ID No. 3421904
Texas State Bar No. 24113667
1800 West Loop South, Suite 1750
Houston, Texas 77027
(713) 629-1800
(713) 629-1812 (Fax)
bbanes@nhblaw.com
sharris@nhblaw.com

**ATTORNEYS FOR PLAINTIFFS,**
**GINA D'AMORE AND MID-ATLANTIC**
**INTERPRETING GROUP, INC.**